UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DARRYL ABRAMOWITZ,

                          Plaintiff,

            -against-                          MEMORANDUM & ORDER
                                               14-CV-2064(JS)(ARL)
TROPICANA ATLANTIC CITY CORP., d/b/a
TROPICANA CASINO AND RESORT; and
MARINA DISTRICT DEVELOPMENT COMPANY,
LLC d/b/a BORGATA HOTEL CASINO AND SPA,

                          Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:           Brian J. Davis, Esq.
                         Law Office of Brian J. Davis
                         400 Garden City Plaza, Suite 450
                         Garden City, NY 11530

For Defendants:          John Joseph Hopwood, Esq.
                         Karen M. Lager, Esq.
                         Marks, O'Neill, O'Brien, Doherty
                           & Kelly, P.C.
                         708 Third Avenue, Suite 2500
                         New York, NY 10017

SEYBERT, District Judge:

        Plaintiff Darryl Abramowitz ("Plaintiff") originally

commenced this action on February 18, 2014 in New York State

Supreme Court against defendants Tropicana Atlantic City Corp.,

d/b/a Tropicana Casino and Resort ("Tropicana"), and Marina

District Development Company, LLC, d/b/a Borgata Hotel Casino and

Spa ("Borgata" and together with Tropicana, "Defendants"),[1]

---

[1] Plaintiff also named as a defendant, Revel Entertainment Group,
LLC, d/b/a Revel Casino Hotel ("Revel"). However, on July 31,
2014, after this action was removed to this Court, Revel filed a

asserting violations of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1, et seq.; Section 349 of the New York General Business Law; and common law claims of fraud and breach of contract. Plaintiff alleges that Defendants fraudulently induced him to travel to their casinos in Atlantic City, New Jersey with promises of complimentary items and services that they ultimately failed to honor. Defendants move pursuant to 28 U.S.C § 1404(a) to transfer venue to the United States District Court for the District of New Jersey. (Docket Entry 13.) For the following reasons, Defendants' motion is GRANTED.

<u>BACKGROUND</u>

Plaintiff is an individual residing in Merrick, New York. Defendants are New Jersey companies that operate casinos in Atlantic City, New Jersey. (Compl. ¶¶ 2-3.) According to the Complaint, Defendants generate business by offering complimentary items and services, commonly referred to as "comps," which are intended to encourage people to travel to their casinos to gamble, rent hotel rooms, and purchase goods and services. (Compl. ¶¶ 6-7.) Plaintiff, who describes himself a "high roller," alleges

---

notice that it had filed for bankruptcy on June 19, 2014. (Docket Entry 14.) Accordingly, this case was automatically stayed pursuant to Section 362 of the United States Bankruptcy Code. (Docket Entry 17.) On October 10, 2014, Plaintiff filed a motion to voluntarily dismiss Revel from this case so that he could proceed against Tropicana and Borgata. (Docket Entry 19.) By Electronic Order dated December 18, 2014, the Court dismissed Revel from this action and lifted the automatic stay.

that Defendants fraudulently induced him to travel from New York to their casinos in New Jersey with promises of comps that Defendants ultimately failed to honor.  (See generally Compl.)

Plaintiff claims that Tropicana contacted him on March 3, 2012 and promised him complimentary lodging, food, beverages, and $5,000 in "match play coupons" if he came to its casino. (Compl. ¶ 19.)  Plaintiff allegedly declined the offer, advising Tropicana that he would only come to its casino if Tropicana upped the match play coupons to $25,000.  (Compl. ¶ 19.)  Later that day, Julie Estrada, a marketing representative for Tropicana, offered Plaintiff $15,000 in match play coupons, which Plaintiff again declined.  (Compl. ¶ 20.)  Plaintiff finally agreed to visit Tropicana's casino on the weekend of June 30, 2012 after Tropicana promised him match play coupons worth $25,000, among other comps. (Compl. ¶ 21.)  However, Plaintiff claims that when he attempted to redeem the match play coupons, he only received $10,000. (Compl. ¶ 22.)  Unhappy with the reduced amount, Plaintiff returned the match play coupons.  (Compl. ¶ 23.)

On April 6, 2011, Jason Lyons, a "host" for Borgata "called" Plaintiff and began soliciting him to visit Borgata's casino with offers of various comps.  (Compl. ¶ 48.)  After nearly a year of receiving solicitations, Plaintiff finally agreed to visit Borgata's casino on March 23, 2012 after Borgata promised him complimentary lodging, food, beverages, and "$5,000 'through

the door' for shopping and more." (Compl. ¶ 49.) Plaintiff claims that on the first day he was there, he gambled and won $105,000. (Compl. ¶ 50.) The next morning, Plaintiff called Lyons and asked him where he could pick up the $5,000 he was previously offered. (Compl. ¶ 50.) Lyons allegedly replied, "We don't give cash, this isn't a shopping mall," and that he would allow Plaintiff to charge the $5,000 to his room. (Compl. ¶ 51.) Believing Borgata would pick up the bill, Plaintiff then charged $1,400 in food and merchandise to his room. (Compl. ¶¶ 52-53.) However, Plaintiff claims that after he left the casino, "all such expenses . . . were placed on his credit card [and] were not removed." (Compl. ¶ 56.) When he complained to Borgata management, he was allegedly told, "we are running a business here, and we don't need customers like you." (Compl. ¶ 57.)

Plaintiff commenced this action on February 18, 2014 in New York State Supreme Court against Tropicana and Borgata, asserting violations of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-1, et seq.; Section 349 of the New York General Business Law; and state law claims of fraud and breach of contract. On July 31, 2014, Defendants filed their motion to transfer venue to the District of New Jersey. (Docket Entry 13.) This motion is currently pending before the Court.

4

DISCUSSION

The Court will first set forth the applicable legal standard on a motion to transfer venue before turning to Defendants' motion more specifically.

I.   Legal Standard

Under 28 U.S.C. § 1404(a), a district court, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "The goal of Section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Blechman v. Ideal Health, Inc., 668 F. Supp. 2d 399, 403 (E.D.N.Y. 2009) (internal quotation marks and citations omitted).   In deciding whether a transfer is warranted, courts consider several factors including:

> (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

5

Innovations Enter. Ltd. v. Haas-Jordan Co., No. 99-CV-1681, 2000 WL 263745, at *1 (E.D.N.Y. Jan. 4, 2000).  The party requesting transfer carries the "burden of making out a strong case for transfer," N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113-14 (2d Cir. 2010) (internal quotation marks and citation omitted), and the plaintiff's choice of forum "should not be disturbed unless the balance of factors tips decidedly in favor of a transfer," Wildwood Imps. v. M/V Zim Shanghai, No. 04-CV-5538, 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005); see also N.Y. Marine, 599 F.3d at 114 (applying a "clear and convincing evidence" standard to a motion to transfer).  The district court retains broad discretion over the ultimate decision to transfer. See In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.").

II.  Application

        There is no dispute that this action could have been brought in the District of New Jersey.  Accordingly, the Court must determine whether the Section 1404 factors weigh in favor of transfer.  As discussed below, the Court finds that the factors, on balance, do weigh in favor of transfer to the District of New Jersey.

A.   <u>Locus of Operative Facts</u>

"'The location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried.'" <u>HomeoPet LLC v. Speed Lab., Inc.</u>, No. 14-CV-0663, 2014 WL 2600136, at *18 (E.D.N.Y. June 11, 2014) (quoting <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>, 860 F. Supp. 128, 134 (S.D.N.Y. 1994)).  To determine the locus of operative facts, "courts look to 'the site of the events from which the claim arises.'" <u>Zaltz v. JDATE</u>, 952 F. Supp. 2d 439, 460 (E.D.N.Y. 2013) (quoting <u>800-Flowers</u>, 860 F. Supp. at 134).

This factor weighs heavily in favor of transfer to the District of New Jersey.  All of the events underlying Plaintiff's claims took place at Defendants' casinos in New Jersey, with the exceptions that Plaintiff resides in New York and that Plaintiff received solicitations by telephone and e-mail in New York.  (<u>See</u> Pl.'s Opp. Br. at 2 (stating that Defendants "came into New York, contacted the Plaintiff, and solicited him by phone and by email in an attempt to lure him down to Atlantic City to gamble in their casinos").  Nonetheless, Plaintiff argues that the operative facts occurred in New York because "[t]he original contact with [Plaintiff], the fraudulent aspect of the relationship between the parties, occurred in New York." (Pl.'s Opp. Br. at 6.)  However, when examining claims of fraud on a motion to transfer venue, "'misrepresentations and omissions are deemed to occur in the

district where they were transmitted or withheld, not where they are received.'" Branthover v. Goldenson, No. 10-CV-7677, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011) (quoting In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)); accord Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank, No. 10-CV-2429, 2011 WL 1226255, at *3 (S.D.N.Y. Mar. 23, 2011) (stating that the locus of operative facts "has been interpreted as the place where events and actors material to proving liability are located").

Additionally, to the extent Plaintiff states a valid breach of contract claim, the locus of operative facts of this claim also is in New Jersey.  The locus of operative facts of a breach of contract claim "'is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.'"  HomeoPet, 2014 WL 2600136, at *18 (quoting Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013)).  In this regard, there is a slight connection to New York in that Plaintiff accepted Defendants' solicitations in New York.  However, this is not particularly significant given that Defendants' employees solicited Plaintiff from New Jersey, Defendants' offers were to be performed in New Jersey, and Defendants' allegedly reneged on their promises in New Jersey. Thus, as between New York and New Jersey, the operative facts

occurred in New Jersey. Id. (holding that the locus of operative facts occurred in Georgia because the contract "was to be performed in Georgia" and because "plaintiff attributes defendant's alleged breach of the [contract] to defendant's actions taken in Georgia," notwithstanding that "some negotiations occurred in New York"); Zaltz, 952 F. Supp. 2d at 460 ("[W]ith respect to plaintiff's breach of contract claim in particular, the alleged breach occurred outside of New York (in California, by Spark Networks employees who allegedly improperly billed plaintiff)."); Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 842 (S.D.N.Y. 2012) (holding that the locus of operative facts "appear[ed] to be California" because the plaintiff's claims would "turn largely on issues such as what [the defendant's] employees did, what they knew about [the plaintiff's] account, their reasons for disabling that account, and their motives for doing so"); see also Abreu v. Family Shipping & Serv., No. 00-CV-0284, 2000 WL 516565, at *2 (E.D.N.Y. Mar. 6, 2000) (holding that the operative facts occurred in New Jersey because, among other things, "[i]t appears that the only connections to New York are that it was the place of initial receipt of the automobile and it is the plaintiff's residence").

"The location of the operative events is a primary factor in a transfer motion." Samson Lift Techs. v. Jerr-Dan Corp., No. 09-CV-2493, 2009 WL 2432675, at *4 (S.D.N.Y. Aug. 7, 2009)

(internal quotation marks and citation omitted).  Thus, this factor weighs heavily in favor of transfer.

    B.   <u>Plaintiff's Choice of Forum</u>

        As a general rule, "a plaintiff's choice of forum is presumptively entitled to substantial deference."  <u>Gross v. British Broad. Corp.</u>, 386 F.3d 224, 230 (2d Cir. 2004) (citation omitted).  However, the deference given to this factor is diminished where the operative facts did not occur in the forum chosen by the plaintiff.  <u>Guccione v. Harrah's Mktg. Servs. Corp.</u>, No. 06-CV-4361, 2009 WL 2337995, at *7 (S.D.N.Y. July 29, 2009) ("While significant deference is normally accorded to plaintiff's choice of forum, this factor 'is given less weight where the case's operative facts have little connection with the chosen forum.'" (quoting <u>Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.</u>, 245 F. Supp. 2d 523, 525 (S.D.N.Y. 2003))); <u>accord</u> <u>GLMKTS, Inc. v. Decorize, Inc.</u>, No. 04-CV-2805, 2004 WL 2434717, at *3 (E.D.N.Y. Nov. 1, 2004).  Here, as noted above, the locus of operative fact is New Jersey and the only connections to New York are Plaintiff's residence and that Defendants contacted Plaintiff in New York.  Accordingly, the Court affords Plaintiff's choice of forum little weight.

    C.   <u>Convenience of the Witnesses</u>

        "'The convenience of the forum for witnesses is probably considered the single most important factor in the analysis of

10

whether a transfer should be granted.'" <u>Zaltz</u>, 952 F. Supp. 2d at
461 (quoting <u>ACE Am. Ins. Co. v. Bank of the Ozarks</u>, 11-CV-3146,
2012 WL 3240239, at *11 (S.D.N.Y. Aug. 6, 2012)).  It appears that
this factor would substantially favor a transfer to New Jersey
because the testimony of Defendants' employees likely will be
central to this case.  However, a party relying on the "convenience
of witnesses" factor "'must clearly specify the key witnesses to
be called and must make a general statement of what their testimony
will cover.'"  <u>Id.</u> (quoting <u>Factors Etc., Inc. v. Pro Arts, Inc.</u>,
579 F.2d 215, 218 (2d Cir. 1978)).  Here, Defendants state that
"'the convenience of witnesses[ ]' clearly and obviously favors
New Jersey where all of the witnesses are located," but Defendants
have not identified any of these witnesses by name or title, nor
have they explained what their testimony will cover.  (<u>See</u> Defs.'
Br., Docket Entry 13-3, at 3.)  Thus, although this factor appears
to favor transfer to New Jersey, the Court does not accord it
substantial weight.

     D.   <u>Availability of Process to Compel Unwilling Witnesses</u>

       Defendants argue that this factor favors transfer
because "if there are . . . unwilling witnesses, they are in all
likelihood located within [New Jersey]."  (Defs.' Br. at 4.)
However, because Defendants have not identified any non-party
witnesses who are unwilling to testify, this factor is
inapplicable.  <u>See Soto v. Bey Transp. Co.</u>, No. 95-CV-9329, 1997

WL 407247, at *4 (S.D.N.Y. July 21, 1997) ("Nothing has been presented to suggest that any of the non-party witnesses would be unwilling to testify. Therefore, this factor does not enter the Court's analysis.").

    E.   <u>Relative Means of the Parties</u>

      "'Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed.'" <u>Scherillo v. Dun & Bradstreet, Inc.</u>, 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010) (quoting <u>800-Flowers</u>, 860 F. Supp. at 135); <u>see</u> <u>also</u> <u>Dwyer v. Gen. Motors Corp.</u>, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (denying transfer where the "[p]laintiffs [were] individuals who are suing a large corporation which possesses considerably greater financial assets").

      Here, the "relative means of the parties" factor is not particularly significant. Clearly, as an individual, Plaintiff possesses less means than Defendants. However, Plaintiff's argument that this factor substantially favors New York is weakened significantly, considering (1) the close proximity between the competing forums; (2) Plaintiff's own admission that he is a "high roller"; and (3) Plaintiff's failure to "offer[ ] . . . documentation . . . to support that it would be prohibitively expensive to prosecute the action [in New Jersey]."

<u>Pecorino v. Vutec Corp.</u>, 934 F. Supp. 2d 422, 439 (E.D.N.Y. 2012)
(citation omitted).  Accordingly, "although the relative means of
an individual plaintiff in contrast to a large company clearly
favors [P]laintiff, the Court does not view this factor as having
significant weight in this particular case because [P]laintiff has
been unable to demonstrate a substantial hardship (financial or
otherwise) caused by the transfer."  <u>Scherillo</u>, 684 F. Supp. 2d at
329 ("Other than conclusory allegations in his affidavit,
plaintiff has not produced documentation that litigating the case
in New Jersey--as compared to New York--would be prohibitively
expensive.").

     F.   <u>Convenience of the Parties</u>

     The "convenience of the parties" factor weighs against
transfer here because "a transfer of venue should not merely shift
the burden of inconvenience from one party to another."  <u>Neil Bros.
Ltd. v. World Wide Lines, Inc.</u>, 425 F. Supp. 2d 325, 328 (E.D.N.Y.
2006).

     G.   <u>The Forum's Familiarity with the Governing Law</u>

     A "'forum's familiarity with the governing law is one of
the least important factors in determining a motion to transfer,
especially where no complex questions of foreign law are
involved.'"  <u>Yovel-Bash v. Wellesley Asset Secured Portfolio,
Inc.</u>, No. 12-CV-5280, 2013 WL 4781539, at *13 (E.D.N.Y. Sept. 5,
2013) (ellipsis omitted) (quoting <u>JFP Touring, LLC v. Polk Theatre,</u>

13

Inc., No. 07-CV-3341, 2007 WL 2040585, at * 15 (S.D.N.Y July 12, 2007)).

As noted, the Complaint asserts causes of action under the New Jersey Consumer Fraud Act, the New General Business Law, and common law.  This Court and courts in the District of New Jersey are equally capable of adjudicating these claims. Defendants argue that this case implicates New Jersey's "extensive statutory and regulatory controls" governing "the offering of 'comps,' credit, and other matters within the subject of the Plaintiff's Complaint." (Defs.' Br. at 4-5.)  However, Defendants do not explain how New Jersey's regulatory scheme is applicable vis-à-vis Plaintiff's claims.  Thus, the Court finds this factor to be neutral.

H.    Location of Documents and Relative Ease of Access to Sources of Proof

While it is true that the documents at issue in this case likely are located in New Jersey, the Court does not find this significant as "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).

14

I.   <u>Trial Efficiency and Interests of Justice</u>

With respect to this factor, Defendants simply rehash the arguments they advanced with respect to the other transfer factors. This factor is therefore inapplicable. <u>CYI, Inc. v. Ja-Ru, Inc.,</u> 913 F. Supp. 2d 16, 26 (S.D.N.Y. 2012) ("The parties' arguments regarding trial efficiency and the interests of justice are essentially reiterations of the points discussed above, which the Court will not reiterate here.").

J.   <u>Balance of the Factors</u>

In sum, the following factors are neutral or inapplicable: the availability of process to compel unwilling witnesses, the relative means of the parties, the forum's familiarity with the governing law, the location of documents and relative ease of access to sources of proof, and trial efficiency and the interests of justice. The most important factor, the convenience of witnesses, weighs in favor of transfer, although its weight is lessened by Defendants' failure to identify its witnesses and their testimony. Another important factor, the locus of operative facts, weighs heavily in favor of transfer since the relevant events took place in New Jersey. Plaintiff's choice of forum traditionally weighs against transfer, but its weight in this case is significantly diminished considering that Plaintiff's claims clearly arose out of events in New Jersey. And finally, although a transfer to New Jersey will merely shift the burden of

inconvenience from Defendants to Plaintiff, this factor carries little weight because any resulting inconvenience is negligible given the close proximity of the competing forums.  On balance, and considering all of the relevant facts, the Court, in its discretion, finds that Defendants have met their burden of showing that transfer to the District of New Jersey is warranted.  Their motion is GRANTED.

CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue (Docket Entry 13) is GRANTED.  The Clerk of the Court is directed to transfer this case to the District of New Jersey.


                                    SO ORDERED.


                                    /s/ JOANNA SEYBERT
                                    Joanna Seybert, U.S.D.J.

Dated:    March __6__, 2015
          Central Islip, New York