[Doc. No. 60]

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

**DARRYL ABRAMOWITZ,**

                    **Plaintiff,**

     **v.**                              **Civil No. 15-1694 (JS)**

**TROPICANA ATLANTIC CITY CORP.,
et al.,**

                    **Defendants.**

**<u>OPINION</u>**

     This matter is before the Court on the "Motion for Summary Judgment" [Doc. No. 60] filed by defendants Tropicana Atlantic City Corporation d/b/a Tropicana Casino and Resort ("Tropicana") and Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa ("Borgata"). Defendants are seeking summary judgment on all of plaintiff Darryl Abramowitz's claims. The Court received plaintiff's opposition [Doc. No. 65] and defendants' reply [Doc. No. 68].[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to

---

[1] The Court is also in receipt of plaintiff's August 4, 2016 letter attaching an excerpt of a case from this District and requesting leave of Court to submit the case. [Doc. No. 69]. As defendants correctly assert in their response [Doc. No. 70], plaintiff's letter filed without leave of Court constitutes an impermissible sur-reply pursuant to L. Civ. R. 7.1(d)(6) and will not be considered. <u>See</u> <u>Tucker v. Sebelius</u>, C.A. No. 07-2230 (RBK), 2010 WL 2761525, at *5 n.3 (D.N.J. July 12, 2010) (declining to consider sur-reply filed without leave of Court). Further, even if

the jurisdiction of this Court to hear the case. [Doc. No. 37]. The Court exercises its discretion to decide defendants' motion without oral argument. See Fed. R. Civ. P. 78; and L. Civ. R. 78.1. For the reasons to be discussed defendants' motion will be GRANTED.

This Opinion addresses whether plaintiff makes out viable claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("NJCFA"), New York General Business Law, N.Y. Gen. Bus. Law § 349 ("NYGBL"), common law fraud and breach of contract. Plaintiff's claims arise from his visits to the Tropicana and Borgata casinos in Atlantic City in 2012. The crux of plaintiff's claims is that defendants made promises of complimentary benefits to encourage him to gamble at their casinos but the promises were not kept.

## I. BACKGROUND

Plaintiff is a "high roller," described as a "gambler who wagers large amounts of money" at various casinos in the United States. Plaintiff receives offers of complimentary benefits in goods and services (hereinafter, "comps") from casinos due to his "high roller" status. Am. Compl. ¶¶ 10, 13-15 [Doc. No. 40]. Defendants Tropicana and Borgata[2] offered comps to plaintiff,

the Court considered plaintiff's sur-reply, it provides no material assistance to the Court.

[2] Plaintiff originally filed his complaint in the Supreme Court of the State of New York on February 18, 2014, asserting the same four claims against three defendants—Tropicana, Borgata and Revel Entertainment Group, LLC d/b/a Revel Casino Hotel ("Revel").

mostly via email communications. While the pertinent facts are not complicated, because a different set of facts apply to each defendant, the Court will address them separately.

**A. Tropicana**

On March 2, 2012, plaintiff received an email invitation from Julie Estrada ("Estrada")—Tropicana's marketing representative—to participate in a blackjack tournament on March 31, 2012. The email invitation also included information regarding "giveaways" and amenities offered by Tropicana. Of particular importance to the present matter is that Estrada's invitation offered $5,000 in "match play coupons."[3] Defs.' Statement of Facts ("SOF") ¶ 4 [Doc. No. 60-4]; see also Defs.' Ex. F [Doc. No. 60-3]. Plaintiff responded via email on the same date, stating: "$25,000 in match play and Ill [sic] come on 3/31 for BJ toun...vegas [sic] gives promo chips!!!" Defs.' Ex. F.

---

On April 1, 2014, defendants removed the case to the Eastern District of New York. See generally Notice of Removal [Doc. No. 1]. On December 18, 2014, the district court granted plaintiff's motion to dismiss Revel pursuant to Fed. R. Civ. P. 41(a)(2) and lifted the automatic stay that was in place because of Revel's pending Chapter 11 bankruptcy. See Dec. 18, 2014 Electronic Order. The Honorable Joanna Seybert, U.S.D.J. subsequently granted defendants' request to transfer venue to this District, finding that the factors under 28 U.S.C. § 1404(a) weighed in favor of the transfer. Mar. 6, 2015 Mem. & Order at 15-16 [Doc. No. 25]. On April 25, 2016, this Court denied plaintiff's Motion to Remand as moot. Apr. 25, 2016 Order [Doc. No. 58].

[3] "Match play coupons" are defined as "non-redeemable coupons offered by casinos," which are used to match the coupon holder's bet, effectively doubling the placed bet. Defs.' SOF ¶ 12.

After several email exchanges, Estrada agreed to provide plaintiff with $25,000 in match play coupons. Via an email dated March 19, 2012, Estrada provided the following information regarding the comps offered to plaintiff on the weekend of March 31:

> I was going to meet you half way offering you 20k but thought if I'm going that far, it just makes sense just to give you what you asked for.
>
> Room:     3/31-4/1 Penthouse Suite butler Service
> RMS:      3/31 Eta? Let me know what you want the butlers to put in your room
> Event:    3/31 9pm 50k Winner-Take-All BJ Tourn 49ppl max Rook [sic] Top Lounge. Finals immediately following
> Other:    3/31 25k Match Play – what denomination so they can have it ready for you?
> Dinner?   Fin, Il Verdi, Golden Dynasty, The Palm, Carmines, Red Square, PF Changs, Cuba Libre...
> Credit:   Inactive – Is your bank still TD?

Id. On March 26, in response to Estrada's request for a confirmation, plaintiff cancelled his trip, stating that he would not attend the March 31 blackjack tournament because he had guests visiting from Chicago. Defs.' SOF ¶¶ 6-7.

Plaintiff eventually made it to Tropicana that summer to gamble. On June 20, 2012, Estrada sent a mass group email, which included plaintiff as a recipient, stating:

> 6/23 Shopping Spree where you can get an Ipad or other items of your choosing
> AND
> The following weekend compete in our
> **$50k winner-take-all BLACKJACK TOURNAMENT** 49PPL
> Maximum!
> MATCH PLAY OR SHOPPING AS WELL – YOU DECIDE.
> **RSVP REQUIRED**

Also included in the email invitation was a disclaimer stating: "*Comps are based on play. Play required for future events. Must be 21. May change or cancel at anytime. . . ." Id. ¶¶ 10-11; see also Defs.' Ex. C. On June 28, plaintiff responded to Estrada's email and confirmed his participation in the June 30 blackjack tournament by stating "yes put me in." Defs.' SOF ¶¶ 13-14. On the weekend at issue, plaintiff stayed at a different hotel, the Revel Casino Hotel. On June 30, plaintiff walked from the Revel to Tropicana to participate in the blackjack tournament. Id. ¶¶ 15-16. Plaintiff was not required to "buy in" or pay to participate in the tournament. Id. ¶ 20.

After the tournament, plaintiff sought to redeem $25,000 in match play coupons; however, the cashier at Tropicana's credit department initially retrieved only $10,000 in coupons for plaintiff. After some discussion, including attempts to contact Estrada, plaintiff accepted the $10,000 in match play coupons by signing for them. Soon thereafter, plaintiff returned the match play coupons without placing them in a bet. Id. ¶¶ 17, 21. Plaintiff returned to his hotel room at the Revel that evening after speaking with Estrada on the phone. Id. ¶ 18. Ultimately, plaintiff did not lose any money or pay to participate in the blackjack tournament at Tropicana on June 30, 2012; however, plaintiff claims he suffered losses in his time, effort and "everything else." Id. ¶¶ 22-23.

**B. Borgata**

Borgata also offered comps to plaintiff in 2012. In an email dated March 22, 2012, Jason Lyons ("Lyons")—Borgata's Vice President of Relationship Marketing—confirmed the following comps available to plaintiff during his stay at Borgata on the weekend of March 23, 2012:

> Hi Darryl,
> All set at Water Club [one of two towers at Borgata] for this Fri and Sat (Penthouse w/ butler). Credit is finalizing your line for $250k now (just stop by our credit office to sign slip before playing). Regarding shopping, I'll comp you $5k thru [sic] the door at any of our store(s), and more by trips end.

Id. ¶ 25. Plaintiff had telephone discussions with Lyons prior to these comps being finalized. Id. Lyons granted plaintiff's request for an additional "$500 comp for the old homestead [a restaurant in Borgata]" by instructing plaintiff to "just sign dinner bill to room." Id. ¶¶ 29-30. On March 23, Borgata also arranged for a limousine to be sent to plaintiff's residence in New York and provided transportation to Borgata in Atlantic City. Id. ¶¶ 26-31.

Upon his arrival at Borgata, plaintiff gambled for several hours and won approximately $105,000. Plaintiff then retired to his penthouse suite in the early hours of March 24. The following morning, plaintiff asked Lyons where he could retrieve the $5,000 in shopping comps. Lyons advised plaintiff that Borgata does not provide shopping comps in cash and instructed plaintiff to charge

his shopping to his hotel room. Id. ¶¶ 35-36. Later that day, plaintiff had some difficulties at Hugo Boss, one of the stores in Borgata, while trying to redeem his shopping comp. Plaintiff's shopping charge of $405.00 at Hugo Boss was eventually charged to his hotel room after Lyons was contacted. Id. ¶ 37. Later that evening, plaintiff had dinner at The Old Homestead and charged his $696.22 dinner bill to his hotel room. Id. ¶¶ 38-39. Plaintiff continued to gamble at Borgata that evening. Plaintiff left Atlantic City at approximately 5:30 a.m. on March 25 via a limousine provided by Borgata. Id. ¶ 40.

On March 26, 2012, plaintiff emailed Lyons, requesting that certain items be shipped from one of the stores in Borgata to plaintiff because either the store did not have the items in stock or plaintiff did not feel like "dragging the rest." The items plaintiff requested in the March 26 email had a total value of $3,790. Id. ¶ 41. During his stay at Borgata on the weekend of March 23, 2012, Borgata provided plaintiff with comps in goods and services with a total value of $5,874.12. Id. ¶¶ 43-44. Some of these comps were either charged to plaintiff's room at Borgata or directly provided to plaintiff without him being charged at all. The comps charged to his hotel room—including $405.00 in shopping and $696.22 in dining—were reflected on plaintiff's credit card statement. Id. ¶¶ 45-46. Subsequently, plaintiff was reimbursed by Borgata for the charges reflected on his credit card, totaling

$1,440.62.[4] Id. ¶¶ 47-48. While plaintiff disputes that the reimbursement to his credit card was the result of any action by Borgata, plaintiff concedes that he ultimately did not pay for the $405.00 shopping charge at Hugo Boss, his lodging at Borgata between March 23 and March 25, 2012, and the limousine transportation for his trip. Id. ¶¶ 46, 50-52.

### C. Parties' Arguments

Defendants argue that plaintiff's opposition to their motion is procedurally and substantively deficient. Defendants request the Court to disregard plaintiff's opposition due to plaintiff's failure to comply with the Local Civil Rules, in particular, L. Civ. R. 56.1. The crux of defendants' substantive argument is that plaintiff cannot establish defendants' unlawful conduct or any measurable damage suffered by plaintiff to make out viable NJCFA, NYGBL, common law fraud and breach of contract claims. Therefore, in defendants' view, plaintiff has resorted to "speculation and conjecture" in opposing their motion. See Defs.' Reply at 1-2 [Doc. No. 68].

Plaintiff argues defendants' motion should be denied because there are disputed material facts as to his claims against each

---

[4] Defendants submitted plaintiff's American Express credit card statements dated April 10, 2012 and June 10, 2012 in support of their motion. The April statement shows plaintiff's credit card was credited $405.00 on March 27, 2012 by the Water Club [Borgata]. Defs.' Ex. D [Doc. No. 60-3]. The June statement shows plaintiff's credit card was credited $1,035.62 on May 22, 2012 by the Water Club. Defs.' Ex. E [Doc. No. 60-3].

defendant. As to Tropicana, plaintiff argues he is entitled to have the jury "draw any inference it wants" whether the offer of $25,000 in match play coupons was limited to the weekend of March 31, 2012 and whether he sustained ascertainable damages. Pl.'s Opp'n at 3, 6 [Doc. No. 65-1]. As to Borgata, plaintiff argues Lyons' promise of a $5,000 shopping comp "thru the door" was not honored because some of the comps were initially charged to plaintiff's credit card, only to be reimbursed due to plaintiff's own actions. In plaintiff's view, a "charge which is later credited back is still a charge." Id. at 17-18.

For the reasons to be discussed, the Court finds that defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact. The Court further notes that plaintiff's response to defendants' motion is replete with procedural deficiencies that may justify the Court finding defendants' motion unopposed.[5] However, the Court denies

---

[5] For instance, plaintiff's statements of facts are mostly devoid of citation to the record. See generally Pl.'s Opp'n at 1-9. Because of plaintiff's failure to properly support his factual assertions or dispute defendants' factual assertions with citations to the record, the Court may "consider the fact undisputed for the purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Moreover, plaintiff's responsive and supplemental statements of material facts are contained in a single document with his opposition brief, and contain legal arguments and conclusions in violation of L. Civ. R. 56.1(a). [Doc. No. 65-1]. While the Court notes that certain procedural deficiencies may be excused if the requirements of the L. Civ. R. 56.1 are met in substance, see Safar

defendants' request to disregard plaintiff's opposition in its entirety and will consider the parties' submissions on the merits. Nonetheless, defendants' motion will still be granted because the Court finds that defendants' conduct does not constitute a NJCFA or NYGBL violation, nor does it constitute common law fraud or breach of contract. The Court further finds that plaintiff did not suffer any damages as a result of defendants' alleged conduct.

## II.  **DISCUSSION**

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Summary judgment is not appropriate if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The materiality of a fact turns on whether under the governing substantive law a dispute over the fact might have an effect on the outcome of the suit. Id. The Court must view all evidence and

---

v. Cox Enterprises, Inc., C.A. No. 10-3069 (JLL), 2013 WL 4084636, at *1 (D.N.J. Aug. 12, 2013), it is arguable whether plaintiff meets this standard.

draw all reasonable inferences in the light most favorable to the non-moving party. See Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008) (citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23. Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. Id. at 256-57; Fed. R. Civ. P. 56(c)(1)(A). Additionally, "if the non-moving party's evidence 'is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted.'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 890-91 (3d Cir. 1992) (quoting Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).

**B. New Jersey Consumer Fraud Act**

Plaintiff's NJCFA claim is premised on the theory that defendants made promises of comps to encourage him to gamble at

their casinos because of his "high roller" status but failed to
keep those promises. The NJCFA "is aimed basically at unlawful
sales and advertising practices designed to induce consumers to
purchase merchandise or real estate." Joe Hand Promotions, Inc. v.
Mills, 567 F. Supp. 2d 719, 723 (D.N.J. 2008) (quoting Daaleman v.
Elizabethtown Gas Co., 390 A.2d 566, 568 (N.J. 1978)). Stated
differently, the NJCFA reflects "the legislative concern . . .
over sharp practices and dealings in the marketing of merchandise
and real estate whereby the consumer could be victimized by being
lured into a purchase through fraudulent, deceptive or other
similar kind of selling or advertising practices." Id. To maintain
a claim under the NJCFA, plaintiff must prove: (1) unlawful conduct
by defendant; (2) an ascertainable loss by plaintiff; and (3) a
causal relationship between the unlawful conduct and the
ascertainable loss. Zaman v. Felton, 98 A.3d 503, 516 (2014).

For the purpose of determining whether plaintiff establishes
the first element, the NJCFA defines "sale" as "any sale, rental
or distribution, offer for sale, rental or distribution or attempt
directly or indirectly to sell, rent or distribute." N.J.S.A. 56:8-
1(e). "Advertisement" is defined to include "the attempt directly
or indirectly by publication, dissemination, solicitation,
indorsement or circulation or in any other way to induce directly
or indirectly any person to enter or not enter into any obligation

12

or acquire any title or interest in any merchandise or to increase the consumption thereof . . . ." N.J.S.A. 56:8-1(a).

Plaintiff's main argument in support of his NJCFA claim is that a reasonable jury could infer defendants engaged in a "classic bait and switch." Pl.'s Opp'n at 20. As to Tropicana, plaintiff argues that the "bait" was the $25,000 in match play coupons offered in Estrada's March 19, 2012 email for March 31, 2012, and the "switch" occurred when plaintiff was given $10,000 in coupons during his June 30, 2012 visit. As to Borgata, plaintiff argues that the promise of $5,000 in shopping comps "thru the door" was the "bait" and plaintiff's credit card being charged was the "switch." Id.

Plaintiff's arguments are rejected. As to Tropicana, plaintiff fails to point to any evidence that Estrada's offer of $25,000 in match play coupons for March 31, 2012 was a standing offer available to plaintiff during his June 2012 visit. Estrada's March 19, 2012 email clearly states, "3/31 25k Match Play—what denomination so they can have it ready for you?"[6] Defs.' Ex. F. Plaintiff cannot overcome the plain language of Estrada's email with his unsupported and speculative arguments that Tropicana's email did not mean what it said, i.e., that the offer only applied

---

[6] The Court's finding is further supported by the details of other comps offered to plaintiff in Estrada's March 19 email: the penthouse suite with butler service on 3/31 and 4/1; "RMS" for 3/31; and the blackjack tournament on 3/31 at 9pm.

if plaintiff visited on March 31, 2012. See Mullen v. New Jersey Steel Corp., 733 F. Supp. 1534, 1539 n.5 (D.N.J. 1990) (declining to follow the parties' arguments when "common sense and the document state otherwise"). Even viewed in the light most favorable to plaintiff, no reasonable inference can be made from the evidence before the Court that the offer of $25,000 in match play coupons for March 31, 2012 applied to plaintiff's June 30, 2012 visit.

Likewise, plaintiff fails to point to any evidence that could lead a reasonable jury to conclude Borgata engaged in unlawful conduct sufficient to maintain his NJCFA claim. Plaintiff argues he did not get a $5,000 shopping credit but the undisputed facts show that he received the credit. Plaintiff concedes he ultimately did not pay for the $405.00 shopping charge, his lodging at Borgata between March 23 and March 25, 2012, and the limousine transportation to and from Atlantic City. Defs.' SOF ¶¶ 46, 50-52. Lyons' March 22, 2012 email promised $5,000 in shopping comps. During the weekend of March 23, 2012, plaintiff redeemed $5,874.12 in comps from Borgata. See id. ¶¶ 43-44. Plaintiff attempts to dispute this fact by questioning Borgata's calculation of the total comps redeemed and asserting that the removal of the charges on his credit card was the result of plaintiff's actions, not Borgata's. See Pl.'s Opp'n at 5. Plaintiff further argues "$5,000 thru the door" should be interpreted as a "shopping spree" with the $5,000 comp available as credit for immediate use. Id. at 17.

As discussed, however, plaintiff fails to point to any evidence to counter defendants' submission of plaintiff's credit card statements showing the removal of the charges by Borgata. See supra note 4. In opposing a motion for summary judgment, plaintiff cannot "rest upon mere allegation[s] or denials of his pleadings" but rather "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The fact of the matter is that plaintiff was promised a $5,000 credit and this is what he received.

Having found that plaintiff cannot raise a genuine issue of material fact as to the first element of his NJCFA claim, "unlawful conduct" by defendants, the Court need not discuss the "ascertainable loss" and "causation" elements. However, even if the Court considers the "ascertainable loss" element, plaintiff cannot survive defendants' motion. This is so because in construing the NJCFA the Third Circuit stated that, "[a]n 'ascertainable loss' is 'either an out-of-pocket loss or a demonstration of loss in value' that is 'quantifiable or measurable. . . . Put differently, a plaintiff is not required to show monetary loss, but only that he purchased something and received 'less than what was promised.'" Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 606 (3d Cir. 2012) (citations omitted). Plaintiff concedes that he did not have to make a purchase or that he ultimately did not pay for any of the comps he received from defendants. Nor does he assert the comps he

15

received lost value that is "quantifiable or measurable." Therefore, the Court finds that plaintiff cannot establish an "ascertainable loss" even if the Court assumes defendants engaged in unlawful conduct. Accordingly, defendants' motion will be granted as to plaintiff's NJCFA claim.

### C. New York's General Business Law Section 349

To succeed on a claim for deceptive trade or business practices under NYGBL § 349, plaintiff must prove that: (1) the challenged act or practice was consumer-oriented; (2) the conduct was materially deceptive or misleading; and (3) plaintiff suffered harm as a result of defendant's act. Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006), aff'd, 213 Fed. Appx. 16 (2d Cir. 2007). Section 349 of NYGBL "was intended to be a consumer protection statute." Id. Therefore, "the gravamen of the complaint must be consumer injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995). Further, plaintiff must show actual harm that is caused by and separate from the alleged deceptive acts. See Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 415-16 (S.D.N.Y. 2004); Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999) (finding no violation of NYGBL § 349 where there was no actual harm besides the alleged deceptive act).

The crux of defendants' argument is that plaintiff's NYGBL claim must fail as a matter of law because defendants' acts at

issue—Estrada's offer of $25,000 in match play coupons in her March 19, 2012 email and Lyons' offer of $5,000 in shopping comps in his March 22, 2012 email—were specifically directed at plaintiff, not the general or consuming public. Defs.' Mot. at 16-18 [Doc. No. 60-5]. Defendants further argue, even if defendants' actions were directed at New York consumers at large, plaintiff fails to provide any evidence that he suffered actual harm as a result of either Estrada's or Lyons' emails. See Defs.' Reply at 7.

In opposition, plaintiff concedes that defendants' offers to plaintiff were "personalized," however, plaintiff disputes defendants' characterization of the offers as "private contract disputes unique to the parties" beyond the scope of NYGBL § 349. Pl.'s Opp'n at 20. Plaintiff further argues he suffered actual harm in the loss of economic opportunity to gamble with the promised $25,000 in match play coupons. Id. at 16. As to Borgata, plaintiff argues he suffered actual harm when he was induced to "walk through the door" and spend money at Borgata's stores regardless of whether plaintiff was subsequently reimbursed. Id. at 18-19.

Plaintiff's arguments must fail. As a preliminary matter, plaintiff presents no competent evidence to support his position that defendants' offers were directed to consumers-at-large. See Euchner-USA, Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136, 143 (2d Cir. 2014) (affirming the district court's dismissal of NYGBL §

17

349 claim because "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambits of the statute."); Naples v. Stefanelli, 972 F. Supp. 2d 373, 399 (E.D.N.Y. 2013) ("A threshold issue in every § 349 case is whether the defendants' conduct was consumer-oriented. . . . [T]o state a claim of consumer-oriented deception, a plaintiff must allege that the disputed acts or practices have a broader impact on consumers at large."). Further, the Court finds that even if the initial communication was directed at consumers at large as a group email, the final terms of the offers at issue were highly individualized and specific to plaintiff. For instance, Tropicana's offer of $25,000 in match play coupons was the result of plaintiff's request and it was plaintiff who cancelled the request. Further, Borgata's offer of comps was the result of phone conversations between plaintiff and Lyons, and further requests by plaintiff for an additional comp for the Old Homestead. See Poller v. BioScrip, Inc., 974 F. Supp. 2d 204, 238 (S.D.N.Y. 2013) (finding that the record was devoid of any evidence to suggest the conduct at issue was consumer-oriented and granting summary judgment on a NYGBL § 349 claim). Accordingly, the Court finds that plaintiff's NYGBL claim fails as a matter of law because even viewed in the light most favorable to plaintiff, there is nothing in the record to suggest that the conduct at issue was consumer-oriented.

Having found that plaintiff cannot raise a genuine issue of material fact as to the threshold element of his NYGBL claim, "consumer-oriented conduct" by defendants, the Court need not discuss plaintiff's NYGBL claim further. However, even if the Court considers the other elements, plaintiff cannot survive defendants' motion. In his opposition plaintiff only addresses the "consumer-oriented conduct" element. <u>See</u> Pl.'s Opp'n at 21. However, as previously described, there is no evidence to suggest that defendants engaged in "materially deceptive or misleading" conduct. Further, plaintiff fails to establish he suffered actual harm as a consequence of defendants' offers. <u>See</u> <u>Bildstein</u>, 329 F. Supp. 2d at 415-16 ("It is well established . . . that the claimed deception cannot itself be the only injury."); <u>Small</u>, 720 N.E.2d at 898 (rejecting the plaintiffs' argument that they suffered actual harm under § 349 because they bought a product that they would not have purchased absent the defendants' deceptive acts). As described, plaintiff did not suffer a loss. Accordingly, defendants' motion will be granted as to plaintiff's NYGBL claim.

**D. Common Law Fraud**

A plaintiff seeking to recover for common law fraud in New Jersey must establish the following elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance

thereon by the other person; and (5) resulting damage." Williams
v. BASF Catalysts LLC, 765 F.3d 306, 317 (3d Cir. 2014) (quoting
Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005)).

Defendants reassert their argument that plaintiff fails to
"present any evidence establishing a material misrepresentation on
behalf of [defendants]." Defendants point to Estrada's March 19
and Lyons' March 22, 2012 emails as the only evidence plaintiff
offers to support his common law fraud claim. As to Tropicana,
defendants argue Estrada's email clearly limited the offer of
$25,000 in match play coupons to the weekend of March 31, 2012.
With regard to Borgata, defendants argue Lyons' email promised
plaintiff $5,000 in shopping comps and plaintiff received numerous
comps in excess of $5,000 during his March 2012 stay at Borgata.
Defs.' Mot. at 19.

The Court agrees with defendants. In response, plaintiff
again relies on unsupported factual assertions and speculation
without even addressing the requisite elements to establish a
common law fraud claim. See Pl.'s Opp'n at 22. Even if defendants'
email offers at issue constitute material misrepresentations,
which is denied, plaintiff fails to advance any argument or present
any evidence that defendants knew or believed in the falsity of
the emails. By way of example, the record establishes it was
plaintiff who requested the $25,000 in match play coupons from
Tropicana for March 31, 2012, only to cancel his trip and

effectively canceling his request. As to Borgata, plaintiff was promised $5,000 in shopping comps and received comps in excess of the amount promised. Under this set of facts there is no factual dispute that defendants did not engage in fraudulent conduct. Thus, summary judgment in favor of defendants is appropriate. See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 342 F.3d 242, 259 n.14 (3d Cir. 2003) (noting that a party who fails to adequately brief her claim waives the claim); Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . (without even a citation to the record) will be deemed waived."); see also Fed. R. Civ. P. 56(e)(3) (permitting the Court to grant summary judgment in the absence of supporting facts so long as the movant is entitled to summary judgment).

To the extent plaintiff attempts to raise a genuine issue of material fact with his purported phone conversation with Estrada in October 2013, the Court will not consider plaintiff's Certification and the attached exhibit [Doc. Nos. 65-2, 65-3] because the Certification does not satisfy the requirements of 28 U.S.C. § 1746 for two reasons. First, plaintiff's Certification is qualified with the language, "to the best of my knowledge and belief," which is insufficient for the "personal knowledge" requirement. Three Rivers Confections, LLC v. Warman, 660 Fed. Appx. 103, 108 n.10 (3d Cir. 2016) (finding that a conditional

statement is "insufficient as a proffer of evidence because affidavits submitted in opposition to a motion for summary judgment must be based on the affiant's personal knowledge") (quoting Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000)). Second, even if considered, plaintiff's Certification contains an inordinate number of legal arguments and unqualified opinions in violation of L. Civ. R. 7.2(a) and is of no material assistance to the Court. Thus, the Court will not consider plaintiff's Certification. See Young v. United States, 152 F. Supp. 3d 337, 351 n.10 (D.N.J. 2015) ("Further, it contains neither a jurat nor a statement in the form prescribed by 28 U.S.C. § 1746, rendering the document unsworn and not under the penalty of perjury. Thus it fails to be an "affidavit" by the plain meaning of the word."). For instance, plaintiff speculates as to Borgata that "a reasonable jury could conclude that had [p]laintiff lost $105,000 rather than coming out winning that sum, Borgata would have honored its promises; would not have charged his credit card and would have welcomed him back with more comps . . . and open arms, hugs and kisses." Id. Such an argument without any evidentiary support has no place in opposing a summary judgment motion. See Anderson, 477 U.S. at 256-57.

Further, even if the Court considers the transcript of the phone conversation attached to plaintiff's Certification, it provides no material assistance to the Court in determining whether

Estrada's March 19, 2012 offer of $25,000 in match play coupons applied to plaintiff's June 2012 visit. This is so because the transcript is incomplete and it is unclear what time frame plaintiff is referring to in the conversation. For instance, plaintiff refers to October 2012 as the relevant time frame in the transcript, which is four months after the June 2012 visit to Tropicana at issue in the case. Thus, the transcript of the October 2013 phone conversation provides no relevant material facts for the Court to consider. Plaintiff cannot "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1)(A). Accordingly, defendants' motion will be granted as to plaintiff's fraud claim under New Jersey common law.

**E. Breach of Contract**

Under New Jersey law, a plaintiff seeking to recover for breach of contract must allege the following elements: (1) the existence of a valid contract between the parties; (2) the breach of contract by defendant; and (3) plaintiff's injury as result of the breach. Luscko v. S. Container Corp., 408 Fed. Appx. 631, 636 (3d Cir. 2010) (citations omitted). To prove the existence of a valid contract, plaintiff must establish "mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization." Interlink Grp. Corp. USA v. Am.

Trade & Fin. Corp., C.A. No. 12-6179 (JBC), 2014 WL 3578748, at *5 (D.N.J. July 18, 2014) (citation omitted).

Defendants reassert their argument that plaintiff fails to present any evidence to support his breach of contract claim and has "resorted to speculation and conjecture." Defs.' Reply at 1. The Court agrees. In opposition, plaintiff presents no legal argument. Plaintiff fails to even address whether there was mutual assent between the parties to establish the existence of a valid contract. See Interlink Grp., 2014 WL 3578748, at *5. Plaintiff rather asserts, "if a contract exists then defendants failed to meet the terms of the contract. If there is no contract then the nature of the offers are fraudulent and intentionally misleading." Pl.'s Opp'n at 22. As noted, such an argument without any evidentiary support has no place in opposing a summary judgment motion. See Anderson, 477 U.S. at 256-57.

The fact of the matter is that there is no evidence of a breach even if the Court assumes the existence of a valid contract. This is so because it was plaintiff who requested $25,000 in match play coupons for March 31, 2012 and it was plaintiff who cancelled his March trip to Tropicana. The Court concludes this constitutes an anticipatory repudiation on plaintiff's part even if a valid contract existed. Sleep for Health, LLC v. Cardio Sleep Servs., Inc., C.A. No. 10-2800 (RBK/KMW), 2012 WL 892938, at *4 (D.N.J. Mar. 15, 2012) ("An anticipatory breach 'occurs when a party

24

renounces or repudiates a contract by unequivocally indicating that it will not perform when performance is due."). As noted, and contrary to plaintiff's argument, the offer of $25,000 in match play coupons only applied to March 31, 2012. It did not apply to plaintiff's later visit. Likewise, Borgata promised plaintiff $5,000 in shopping credit and that is what plaintiff received.

Further, even assuming defendants breached their contracts, which is denied, plaintiff cannot establish he suffered any actual, measurable or ascertainable damages due to the breach. Accordingly, defendants' motion will be granted as to plaintiff's breach of contract claim.[7]

### III. CONCLUSION

In conclusion, plaintiff fails to demonstrate that there are fact questions that need to be resolved in order decide his NJCFA, NYGBL, common law fraud and breach of contract claims. Plaintiff's failure to raise a genuine issue of material fact with record evidence is compounded by his attempt to oppose defendants' summary judgment motion with "speculation and conjecture." Therefore, plaintiff's claims fail as a matter of law and summary judgment

---

[7] Plaintiff now speculates "he may prevail on quasi-contract detrimental reliance theories as well" for his "lost time and opportunity." Pl.'s Opp'n at 23. The Court will not consider this new claim without factual support. Further, this claim was not pleaded by plaintiff. Holland v. Simon Prop. Grp., Inc., 495 Fed. Appx. 270, 273 n.10 (3d Cir. 2012) (noting that the District Court correctly declined to consider claims asserted for the first time in plaintiff's opposition brief to a motion for summary judgment).

will be granted in defendants' favor. An appropriate Order will be
separately entered.

<div style="margin-left: 40%">

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

</div>

Dated: March 17, 2017